**FILED & ENTERED**

JUL 27 2015

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY** cargill    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>MAURICE ALLEN GILBERT,<br><br><br><br>Debtor. | Case No.: 6:14-bk-11606-MH<br><br>Chapter 13<br><br>**MEMORANDUM OF DECISION DENYING CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN AND DISMISSING DEBTOR'S CHAPTER 13 CASE WITHOUT PREJUDICE**<br><br><u>Confirmation Hearing</u><br>Date:        April 23, 2015<br>Time:       1:30 p.m.<br>Courtroom: 303 |

### I.    **FACTUAL BACKGROUND**

<u>THE PHOENIX PROPERTY</u>

Debtor Maurice Allen Gilbert ("Debtor"), filed for bankruptcy on February 10, 2014 ("Petition Date"). Prior to the Petition Date, on August 29, 2005, InterBay Funding LLC ("InterBay") loaned $380,000 (the "Loan") to Debtor, and InterBay secured its right to repayment of the Loan by obtaining a deed of trust (the "Phoenix Deed of Trust") on real property located at 402 & 406 N. 42nd Street, Phoenix, AZ 85008 (the "Phoenix Property").

On August 28, 2006, InterBay assigned the Phoenix Deed of Trust to Bayview Loan Servicing, LLC ("Bayview") by way of a corporate deed of assignment recorded on February 26, 2007. Without the consent of Bayview, on August 7, 2008, Debtor transferred title in the

Phoenix Property to Ridgeline Financial, LLC ("Ridgeline") and Sardius Group, LLC ("Sardius"), two LLC companies owned by the Debtor.

After a series of corporate assignments, Creditor APT 4891, LLC ("APT") succeeded to the Phoenix Deed of Trust on April 11, 2013. After Debtor defaulted on the Loan, on May 2, 2013, APT sent the Debtor a notice of default, and accelerated the debt underlying the Loan. On August 31, 2013, APT recorded a notice of trustee's sale of the Phoenix Property. In an effort to stall the Trustee's Sale of the Phoenix Property, Ridgeline and Sardius filed two chapter 7 bankruptcy petitions on December 16, 2013 (Case No. 2:13-bk-39366-VZ and Case No. 2:13-bk-39362-TD), respectively. Both cases were dismissed in January 2014, with a 180 day re-filing bar, for failure to file required case commencement documents. After the Sardius and Ridgeline bankruptcy cases were dismissed, APT scheduled another foreclosure sale (the "Second Foreclosure") on the Phoenix Property for February 11, 2014.

### DEBTOR'S CHAPTER 13 CASE

On the Petition Date, the day before the Second Foreclosure on the Phoenix Property was scheduled to take place and less than two months after the Ridgeline and Sardius bankruptcies were dismissed, Debtor filed for relief under chapter 13 of the Bankruptcy Code.

### RELIEF FROM STAY

On February 27, 2014, APT filed a motion for relief from the automatic stay under 11 U.S.C. § 362 (the "Relief From Stay Motion"), requesting entry of an order finding that the automatic stay did not apply to the Phoenix Property because the Phoenix Property was entirely owned by non-debtor entities, Ridgeline and Sardius. On April 2, 2014, the bankruptcy court entered an order (the "Relief From Stay Order") granting the Relief From Stay Motion, holding that the Phoenix Property was not property of the Debtor's bankruptcy estate because it was entirely owned by Ridgline and Sardius. On May 8, 2014, APT finally foreclosed on the Phoenix Property and sold it to a third party, known as Panther 42nd St Partners LLC ("Third Party Purchaser").

On April 16, 2015, Debtor filed a Notice of Appeal of the Relief from Stay Order to the U.S. District Court of the Central District of California. On January 27, 2015, the District Court

2

entered an Order dismissing the appeal of the Relief From Stay Order as moot, because Arizona law did not provide Debtor with a right to redeem the Phoenix Property after it had been sold to a third party buyer.

INITIAL CONFIRMATION HEARING AND CASE DISMISSAL

Debtor filed his first chapter 13 plan ("First Plan") on the Petition Date. APT filed an objection to confirmation of the First Plan on March 20, 2015. APT objected to the confirmation of the First Plan on the basis that Debtor filed the bankruptcy in bad faith, and to the extent that APT held a valid claim in Debtor's bankruptcy, the First Plan was infeasible pursuant to 11 U.S.C. section 1307(c).

On April 3, 2014, a confirmation hearing on the First Plan took place, and was continued to May 1, 2014, for supplemental briefing. On April 2, 2014, APT filed a supplemental objection to confirmation of the First Plan in the basis that Debtor filed the instant case in bad faith and the First Plan was infeasible. On April 9, 2014, Creditor US Bank, N.A. ("US Bank"), also filed an objection to confirmation of the First Plan on the basis of infeasibility. After the May 1, 2014 hearing, on May 2, 2014, the bankruptcy court entered an order ("Dismissal Order") denying confirmation of Debtor's First Plan, and dismissing Debtor's bankruptcy case because the First Plan was infeasible and because Debtor filed the case in bad faith.

APPEAL OF DISMISSAL ORDER

On May 14, 2015, Debtor appealed the Dismissal Order to the U.S. District Court of the Central District of California. On January 27, 2015, the District Court entered an Order, in part, reversing and remanding the Dismissal Order (the "District Court Order") for further findings regarding the presence or lack of bad faith on the part of the Debtor in filing the chapter 13 petition as a basis for the Dismissal Order.

**II.    PROCEDURAL BACKGROUND POST-REMAND**

On February 20, 2015, at 1:30 p.m., the Court held a status conference regarding the District Court Order. On February 25, 2015, the Court entered a scheduling order ("Scheduling Order") providing Debtor with an opportunity to file and serve an amended plan (the "Second Plan"), amended schedules I and J, and current proof of income no later than March 13, 2015,

and setting a confirmation hearing ("Confirmation Hearing") on the Second Plan for April 23, 2015. The Scheduling Order also provided that any objection to confirmation or request to dismiss Debtor's case be filed by April 16, 2015.

On March 13, 2015, pursuant to the Scheduling Order, Debtor filed the Second Plan and amended schedules I ("Amended Schedule I") and J ("Amended Schedule J"). However, Debtor then proceeded to file in rapid succession: (1) his third chapter 13 plan on March 27, 2015 ("Third Plan"); (2) his fourth plan on April 14, 2015 ("Fourth Plan"); and, on April 22, 2015, one day before the Confirmation Hearing, his fifth plan ("Fifth Plan"). In opposition to confirmation of Debtor's Second Plan, on April 16, 2015, the chapter 13 trustee ("Trustee") and APT each filed objections to confirmation and requests to dismiss Debtor's case.

The Court, having heard and considered the arguments of the parties at the Confirmation Hearing and having considered the pleadings filed with the Court, and finding notice proper, finds cause to deny Debtor's Second Plan and Fifth Plan (assuming, arguendo, that the Fifth Plan is operative), and to dismiss the instant case.

### III. LEGAL DISCUSSION

11 U.S.C. section 1307(c) enumerates eleven <u>non-exclusive</u> grounds which may constitute "cause" for dismissal of a chapter 13 bankruptcy case. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999); In re Eisen, 14 F.3d 469 (9th Cir. 1994).[1] In addition to the eleven enumerated bases for dismissal for cause, the Ninth Circuit holds that cause to dismiss a chapter 13 case exists if a plan is proposed or a case is filed

---

[1] In relevant part, section 1307(c) gives the bankruptcy court discretion to dismiss a case, including, without limitation, for the following reasons: (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees and charges required under chapter 123 of title 28; (3) failure to file a plan timely under section 1321 of this title; (4) failure to commence making timely payments under section 1326 of this title; (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan; (6) material default by the debtor with respect to a term of a confirmed plan; (7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title; (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan; (9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a); (10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or (11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

in bad faith. In re Leavitt, 171 F.3d at 1223; In re Ellsworth, 455 B.R. 904, 915 (9th Cir. B.A.P. 2011).

In the instant case, the Court finds cause to dismiss, without prejudice, Debtor's chapter 13 case for, inter alia, the following grounds (**each of which the Court notes is an independent basis for denial of confirmation and dismissal**):

1. The Debtor filed the Second Plan in bad faith;
2. Pursuant to 11 U.S.C. section 1307(c)(5), the Second Plan and Fifth Plan (assuming the latter is operative) are infeasible;
3. Pursuant to 11 U.S.C. section 1307(c)(4) "Cause" exists to dismiss the case for Debtor's failure to make plan payments post-petition and post-remand as required pursuant to 11 U.S.C. section 1326;
4. Debtor's failure to provide sufficient proof of income, which makes him ineligible to be a debtor under chapter 13 of the bankruptcy code pursuant to 11 U.S.C. section 109(e);
5. Debtor's non-compliance with 11 U.S.C. section 521(e)(2)(A) by failing to provide a copy of his 2013 federal tax returns to the Trustee within 7 days before the first meeting of creditors; and
6. Debtor's failure to disclose, in his bankruptcy petition and schedules: (1) the prior bankruptcy filings by the Debtor's wholly owned subsidiaries, Ridgeline and Sarduis, which are affiliates of the Debtor pursuant to 11 U.S.C. section 101(2); (2) his unemployment income in his Schedule I; and (3) his interest in affiliate Three-C's Residential & Commercial Builder, LLC.

**A.    DEBTOR FILED THE SECOND PLAN IN BAD FAITH**

In order to confirm a chapter 13 Plan, the plan must be "proposed in good faith and not by any means forbidden by law..." 11 U.S.C. § 1325(a)(3). Confirmation of the Debtor's Chapter 13 Plan must be denied where, as here, the plan is proposed in bad faith. In re Chinichian, 784 F.2d 1440 (9th Cir. 1986); Noreen v. Slattengren, 974 F.2d 75 (8th Cir. 1992).

In Leavitt, the Ninth Circuit concluded that "bad faith" does not require a finding of fraud, malice or ill will:

> A finding of bad faith does not require fraudulent intent by the debtor. Neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor illwill directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.

5

Id. at 1224-1225 quoting In re Powers, 135 B.R. 980, 994 (Bankr. C.D. Cal. 1991). See also In re Waldron, 785 F.2d 936, 941 (11th Cir. 1986) ("manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse."); In re Grieshop, 63 B.R. 657, 663 (N.D. Ind. 1986).

Pursuant to In re Goeb, 675 F.2d 1386, 1390 (9th Cir. 1982), and Fidelity & Casualty Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 93 (9th Cir. B.A.P. 1988), a court determines whether a chapter 13 plan is filed in bad faith by weighing and balancing the following factors (the "Warren Factors") in their totality:

1. The amount of the proposed payments and the amounts of the debtor's surplus;
2. The debtor's employment history, ability to earn, and likelihood of future increases in income;
3. The probable or expected duration of the plan;
4. The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;
5. The extent of preferential treatment between classes of creditors;
6. The extent to which secured claims are modified;
7. The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;
8. The existence of special circumstances such as inordinate medical expenses;
9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
10. The motivation and sincerity of the debtor in seeking Chapter 13 relief; and
11. The burden which the plan's administration would place upon the trustee.

Here, in applying the facts to the Warren Factors, the Court finds that the Debtor filed his bankruptcy case in bad faith for reasons supported by the record, including the following:[2]

        (a)        Amount of Proposed Payments and Amount of Debtor's Surplus:

The Second Plan proposes a plan payment of $5,259.45 per month, yet Debtor's Amended Schedules I and J reflect that Debtor only has $200 in disposable monthly income. As such, the Second Plan is infeasible on its face. This factor weighs in favor of finding that the Debtor filed the Second Plan in bad faith.

        (b)        Debtor's Employment History, Ability to Earn, and Likelihood of Future Increases:

Debtor is unemployed and has offered insufficient evidence that he will have the ability to earn additional income to make the $5,259.45 monthly payments under the Second Plan. Although the Court afforded the Debtor another opportunity to provide sufficient proof of income pursuant to the Scheduling Order, Debtor has failed to do so.

On Debtor's Amended Schedule I, Debtor asserts that *"he"* receives monthly income from rental property and from operating a business in the amount of $4,725.00. However, the only evidence Debtor submitted in support of this contention was rental agreements ("Rental Agreements") pertaining to another real property (the "Glendale Property"), reflecting rental income generated in the amount of $2,550.00 per month. Further, the Rental Agreements are between tenants and Rald Financial as opposed to Debtor himself. As such, the Rental Agreements fail to provide sufficient evidence of Debtor's income or any future increases thereof. This factor weighs in favor of finding that the Debtor filed the Second Plan in bad faith.

---

[2] This Court adopts the Warren analysis regarding dismissal where a case is dismissed ***without*** prejudice, as is the case here, and notes that the Leavitt analysis is specific to dismissal ***with*** prejudice. Assuming, arguendo, that Leavitt did apply, the Court nonetheless finds that dismissal remains appropriate under analysis of the Leavitt factors.

      (c) <u>The Probable or Expected Duration of the Plan:</u>

  The Second Plan proposes repayment to creditors under a standard 60 month time period. As such, this factor neither weighs in favor of or against a finding that the Debtor filed the Second Plan in bad faith.

      (d) <u>The Accuracy of the Second Plan's Statements of Debts, Expenses and Percentage of Repayment of Unsecured Debt, and Whether Any Inaccuracies Are an Attempt to Mislead the Court:</u>

  In the case at hand, Debtor misrepresented facts in the Second Plan by providing for repayment of creditors with security interests in real properties that the Debtor does not own, which are therefore not property of the Debtor's bankruptcy estate. Specifically, on Schedule A, Debtor listed the Phoenix Property and the Glendale Property. However, the Phoenix Property was not owned by Debtor at the time that he filed for bankruptcy. Rather, the Phoenix Property was owned by non-debtor third parties Ridgeline and Sardius, and the Glendale Property was owned by a non-debtor third party named Rald Financial. As such, Debtor intentionally included the Phoenix and Glendale Properties on Schedule A in an attempt to delay foreclosure on the properties and to mislead the Court into believing that the Phoenix and Glendale properties were owned by Debtor, and therefore property of Debtor's bankruptcy estate.

  In addition, the Second Plan lists US Bank and APT as creditors with security interests in the Phoenix and Glendale Properties. However, at the time that the Debtor filed the Second Plan, US Bank and APT had already foreclosed on the Phoenix and Glendale properties, rendering them as unsecured creditors for any remaining deficiency post-foreclosure. Further, as asserted above, even if US Bank and APT were secured creditors, their claims were secured by the Phoenix and Glendale Properties, which are not properties of the estate, as those real properties are wholly owned by non-debtor entities Ridgeline, Sardius, and Rald Financial.

  Finally, Debtor filed a declaration setting forth post-petition, pre-confirmation payments on deeds, asserting, under penalty of perjury, that he mailed/delivered thirteen post-petition mortgage payments to Ocwen Loan Servicing (servicer for US Bank which holds a deed of trust on the Glendale Property). However, Debtor's testimony at the creditors' 341(a) meeting

revealed that he had paid only three of the thirteen payments. As such, assuming that US Bank was a secured creditor with an interest in property of the estate, which it is not, the Second Plan misstates the amount of arrears owed US Bank.

Based on the foregoing, this factor weighs in favor of finding that the Debtor filed the Second Plan in bad faith.

(e) <u>The Extent of Preferential Treatment between Classes of Creditors:</u>

Assuming that APT has a valid unsecured claim in Debtor's bankruptcy, the Second Plan attempts to pay APT interest, but not any other unsecured claim. As such, the Second Plan unlawfully discriminates against creditors within the same unsecured class, in direct violation of 11 U.S.C. section 1322(a). Therefore, this factor weighs in favor of finding that the Debtor filed the Second Plan in bad faith.

(f) <u>The Extent to Which Secured Claims are Modified:</u>

The Second Plan does not appear to modify any secured claims, as such, this factor neither weighs in favor of or against a finding that the Debtor filed the Second Plan in bad faith.

(g) <u>The Type of Debt Sought to be Discharged, and Whether Any Such Debt is Non-Dischargeable:</u>

No evidence has been submitted with respect to any non-dischargeable claims. As such, this factor neither weighs in favor of or against a finding that the Debtor filed the Second Plan in bad faith.

(h) <u>The Existence of Special Circumstances Such as Inordinate Medical Expenses:</u>

No evidence has been submitted regarding any inordinate medical expenses. As such, this factor neither weighs in favor of or against a finding that the Debtor filed the Second Plan in bad faith.

(i) <u>The Frequency With Which the Debtor Has Sought Relief Under the Bankruptcy Reform Act:</u>

While Debtor has no history of prior filings, two of Debtor's LLCs, Ridgeline and Sardius, owners of the Phoenix Property, filed two prior chapter 7 petitions on December 16,

9

1  2013 (Case No. 2:13-bk-39366-VZ and Case No. 2:13-bk-39362-TD) in an apparent attempt to
2  stall foreclosure on the Phoenix Property. Both cases were dismissed in January 2014, with a
3  180 day re-filing bar, for failure to file required case commencement documents. Within two
4  months after the Ridgeline and Sardius bankruptcies were dismissed, the day before the
5  foreclosure sale on the Phoenix Property was scheduled to take place, Debtor filed the instant
6  case on February 10, 2014, in another attempt to hinder and delay foreclosure on the Phoenix
7  Property.

Based on the foregoing, <u>and also noting that the Debtor did not disclose in his schedule of related cases the existence of the Sardius and Ridgeline bankruptcy cases, as he was required to do</u>, the Court finds that the instant case was filed as part of a scheme to hinder and delay APT from foreclosing on the Phoenix Property. As such, this factor weighs in favor of finding that the Debtor filed the Second Plan in bad faith.

(j)  <u>The Motivation and Sincerity of the Debtor in Seeking Chapter 13 Relief:</u>

The Court finds Debtor's motivation in seeking chapter 13 relief was to hinder and delay foreclosure on the Phoenix Property as Debtor filed the instant case one day before the foreclosure sale on the Phoenix Property was scheduled to take place. In addition, Debtor listed the Phoenix Property on Schedule A, when in fact Debtor knew that the Phoenix Property was owned by non-debtor entities Ridgeline and Sardius, and was therefore not property of the bankruptcy estate.

Finally, the fact that the Debtor merely has $200 in disposable monthly income, yet proposes to make monthly plan payments of $5,259.00 under the Second Plan, indicates that the Debtor's motivation in filing the instant chapter 13 case was to forestall foreclosure on the Phoenix Property, as opposed to presenting a realistically confirmable plan that Debtor would reasonably be able to consummate.

Based on the foregoing, this factor weighs in favor of finding that the Debtor filed the Second Plan in bad faith.

        (k) <u>The Burden Which the Plan's Administration Would Place Upon the Trustee:</u>

The Trustee asserts that the burden to administer the Second Plan is minimal. As such, this factor is neutral in the case at hand.

After assessing the <u>Warren</u> factors in their totality, the Court finds that Debtor filed the Second Plan in bad faith. Debtor's primary motivation in filing the Second Plan was to forestall foreclosure on the Phoenix Property, as opposed to putting forth a chapter 13 plan that Debtor could realistically comply with. As such, the Court finds that there is "cause" to dismiss the instant bankruptcy case as Debtor filed the Second Plan in bad faith.

**B.** **THE SECOND PLAN IS INFEASIBLE PURSUANT TO 11 U.S.C. SECTION 1307(C)(5)**

Pursuant to 11 U.S.C. section 1307(c)(5), cause exists to dismiss a chapter 13 case if the chapter 13 plan is infeasible. Under section 1307(c)(5), a plan is infeasible if (1) it cannot be confirmed under 11 U.S.C. section 1325, <u>and</u> (2) the Court denies a request made for additional time for filing another plan or a modification of a plan.

With regard to the first requirement, confirmation of a chapter 13 plan is governed by 11 U.S.C. section 1325. <u>In re Welsh</u>, 465 B.R. 843, 847 (9th Cir. B.A.P. 2012). Under 11 U.S.C. section 1325 (a)(6), a plan cannot be confirmed "unless the debtor will be able to make all payments under the plan and comply with the plan." <u>Hamilton v. Lanning</u>, 560 U.S. 505, 521 (2010). The debtor has the burden to prove that each element under 11 U.S.C. § 1325 is met. <u>In re Welsh</u>, 465 B.R. at 847; <u>Meyer v. Hill (In re Hill)</u>, 268 B.R. 548, 552 (9th Cir. BAP 2001).

In the case at hand, after multiple amended bankruptcy schedules and chapter 13 plans, Debtor has failed to carry his burden of establishing that he is able to make all payments under the Second Plan. Specifically, the Second Plan is infeasible on its face, as it proposes to make $5,259.45 monthly plan payments, yet Debtor only has $200 in disposable income and he has provided no evidence substantiating his ability to generate sufficient future income to make the $5,259.45 monthly payments. Although Debtor provided the Trustee with deposit slips reflecting amounts he deposits into an alleged business account, this is insufficient proof of

11

income because deposit slips provide no information as to the source of the funds deposited.  As Debtor failed to provide copies of his 2014 tax returns to the Trustee (or his 2013 tax returns, in violation of Rule 3015-1(c)(5) of the Local Bankruptcy Rules for the United States Bankruptcy Court, Central District of California ("Local Bankruptcy Rules")), or any other adequate proof of income, Debtor has failed to provide sufficient evidence that he can comply with the Second Plan pursuant to 11 U.S.C. section 1325(a)(6).

With regard to the second requirement, at the Confirmation Hearing, Debtor requested the Court to allow him to file a sixth amended chapter 13 plan, and the Court exercised its discretion and denied that request.  Pursuant to Local Bankruptcy Rule 3015-1(h)(1), if a debtor wishes the court to confirm a plan other than the plan originally filed with the court, and files an amended plan, that amended plan must be filed and served at least 7 days before the confirmation hearing if the amended plan does not adversely affect any creditor, or 28 days before the confirmation hearing if the amended plan treats any creditor's claim less favorably.  If the debtor fails to comply with Local Bankruptcy Rule 3015-1(h)(1), the court may dismiss the debtor's bankruptcy case.

Here, after the Scheduling Order set the Confirmation Hearing Date (April 23, 2015), the Debtor filed three amended plans (the Third, Fourth, and Fifth Plans), all of which adversely affected creditors, outside of the 28 day period specified under  Local Bankruptcy Rule 3015-1(h)(1). As expressed at the Confirmation Hearing, debtors could abuse the bankruptcy process by continuously filing consecutive amended plans without providing the court, the chapter 13 trustee, or other creditors with enough time to review the plan.  If a court were required to continue confirmation hearings every time that a debtor filed an amended plan on the eve of a scheduled confirmation hearing, a debtor could potentially prevent a court from ever dismissing his case by simply filing an amended plan. Local Bankruptcy Rule 3015-1(h)(1) prevents this inequitable result.

Nor does 11 U.S.C. section 1323(a) change this result.   That section states in relevant part that "[t]he debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1322 of this title."

11 U.S.C. § 1323(a). In this case, Debtor has had more than a year to formulate a confirmable plan, and has filed five plans of reorganization during that time, none of which, for reasons set forth herein, satisfy confirmation requirements. In addition, as noted above, to interpret section 1323(a) as literally allowing Debtors an infinite ability to file amended plans would wreak havoc on the chapter 13 process where, as is here, multiple plans are filed within a short window precluding parties in interest from having adequate due process to analyze and formulate coherent positions. Rather, this court holds that section 1323(a) is not without a reasonableness limitation, and is furthermore subject to other Bankruptcy Code provisions, such as the ability to deny confirmation and dismiss a case for cause shown. As such, the Court exercised its discretion in denying Debtor's request for an opportunity to file a sixth amended plan, and dismissing Debtor's case.

Based on the foregoing, in addition to the Second Plan being filed in bad faith, the Court finds that cause exists to dismiss the Debtor's bankruptcy case because the Second Plan is infeasible.

### C. THE FIFTH PLAN IS INFEASIBLE

As explained above, under 11 U.S.C. section 1307(c)(5), a plan is infeasible if (1) it cannot be confirmed under 11 U.S.C. section 1325 and (2) the Court denies a request made for additional time for filing another plan or a modification of a plan. The debtor has the burden to prove that each element under 11 U.S.C. section 1325 is met. In re Welsh, 465 B.R. at 847; Meyer v. Hill (In re Hill), 268 B.R. 548, 552 (9th Cir. B.A.P. 2001).

In the alternative, assuming instead that the Fifth Plan is the plan at issue, Debtor has failed to provide sufficient evidence that each requirement under 11 U.S.C. section 1325 is met under the Fifth Plan. Specifically, 11 U.S.C. section 1325(a)(6) requires Debtor to provide sufficient evidence that he can make all plan payments under the proposed plan. Here, the Fifth Plan proposes to $107.91 monthly plan payments. Although Debtor alleges that he generates $200 in disposable monthly income, as noted above Debtor has failed to provide copies of his 2014 tax returns, or any other proof of income verifying Debtor's monthly income. As such,

Debtor has failed to provide sufficient evidence that he currently generates $200 in disposable monthly income to fund the $107.91 monthly plan payments under the Fifth Plan.

With regard to the second requirement, the Fifth Plan treats multiple non-priority unsecured claims adversely by completely removing them from the plan. Under the Fourth Plan, Debtor included payment provisions to Cavalry Investments (holder of a $262.70 non-priority unsecured claim), Resurgent Capital Services (holder of a $1,404.01 non-priority unsecured claim), and American Express (holder of a $13,014.61 non-priority unsecured claim). However, the Fifth Plan does not provide for any plan payments to these non-priority unsecured claimants. A Chapter 13 debtor must affirmatively resolve disputed claims. In re Santa Maria, 128 B.R. 32, 38 (Bankr. N.D.N.Y. 1991). A Chapter 13 plan cannot simply exclude a claim. "[A]n objection to the proof of claim must be filed in accordance with the bankruptcy rules. A Chapter 13 plan cannot substitute for the proper initiation of a contested matter..." In re Riggel, 142 B.R. 199, 205 (Bankr. S.D. Ohio 1992).

As such, the Fifth Plan adversely affects creditors, and pursuant to Local Bankruptcy Rule 3015-1(h)(1), should have been filed at least 28 days prior to the Confirmation Hearing Date. As the Fifth Plan was filed the day before the Confirmation Hearing Date, the Court exercised its discretion in denying Debtor's request for an opportunity to file a sixth amended plan, and dismissing Debtor's case.

For the foregoing reasons, cause exists to dismiss Debtor's bankruptcy case as the Fifth Plan is infeasible.

**D. ALTERNATIVE GROUNDS FOR DENIAL OF CONFIRMATION AND DISMISSAL OF CASE**

(a) DEBTOR'S FAILURE TO MAKE TIMELY PLAN PAYMENTS

In addition to the aforementioned grounds for dismissal, section 1307(c)(4) gives the bankruptcy court discretion to dismiss a case for a debtor's failure to commence making timely payments under 11 U.S.C. section 1326. Under 11 U.S.C. section 1326(a)(1)(A), unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after

the date of the filing of the plan or the order for relief, whichever is earlier, in the amount proposed by the plan to the trustee.

Here, Debtor has yet to make a single plan payment as of the date that the Dismissal Order was vacated by entry of the District Court Order on January 27, 2015. As such, cause exists to dismiss Debtor's case pursuant to section 1307(c)(4).

(b)     DEBTOR'S FAILURE TO PROVIDE PROOF OF REGULAR INCOME

Additionally, 11 U.S.C. section 109(e) provides that only an individual with "regular income" may be a debtor under chapter 13 of the Bankruptcy Code.

Here, not only has Debtor failed to provide sufficient proof of income, but Debtor has failed to establish that whatever amounts of income he has, as opposed to that of any non-debtor LLCs, is received on a regular basis. As such, cause exists to dismiss the instant case as Debtor has failed to provide sufficient evidence establishing that he receives regular income as required by 11 U.S.C. section 109(e).

(c)     DEBTOR'S FAILURE TO TIMELY PROVIDE TAX RETURNS

Pursuant to 11 U.S.C. section 521(e)(2)(A), the Debtor shall provide, "not later than 7 days before the date first set for the first meeting of creditors, to the trustee a copy of the federal income tax return required under applicable law (or at the election of the debtor, a transcript of such return) for the most recent tax year ending immediately before the commencement of the case and for which a Federal income tax return was filed; and at the same time the debtor complies with clause (i), a copy of such return (or if elected under clause (i), such transcript) to any creditor that timely requests such copy." Pursuant to 11 U.S.C. section 521(e)(2)(B), if the debtor fails to comply with clause (i) or (ii) of subparagraph (A), the court *shall dismiss* the case unless the debtor demonstrates that the failure to so comply is due to circumstances beyond the control of the debtor.

Here, the Debtor has failed to provide a copy of his 2013 federal tax returns to the Trustee within seven days before the first meeting of creditors on December 3, 2014, as required under 11 U.S.C. section 521(e)(2)(A). The Debtor has offered no explanation, or identified circumstances beyond his control, that prevented Debtor from providing the Trustee with a copy

15

of his 2013 federal tax returns within seven days before the first meeting of creditors on December 3, 2014. As such, the Bankruptcy Code requires the Court to dismiss the Debtor's case.

(d) DEBTOR'S FAILURE TO DISCLOSE

Finally, courts may consider the accuracy of the debtor's schedules and statement of affairs in assessing the debtor's good faith. See, e.g., In re Santa Maria, 128 B.R. 32, Fn. 2 (Bankr. N.D.N.Y. 1991) ("the 'accuracy of the bankruptcy papers' is a factor properly considered in assessing good faith"); In re Stewart, 109 B.R. 998, 1004 (D. Kan. 1990).

Here, the Debtor's *Statement of Related Cases information Required by LBR 1015-2* filed in his case failed to disclose the prior bankruptcy filings by the Debtor's wholly owned subsidiaries, Ridgeline and Sarduis, which are affiliates of the Debtor pursuant to 11 U.S.C. section 101(2). Second, as set forth in the Trustee's objection to confirmation and request to dismiss, the Debtor has failed to disclose any unemployment income in his Schedule I. Last, as set forth in the APT objection to confirmation and request to dismiss, Debtor has failed to disclose his interest in affiliate Three-C's Residential & Commercial Builder, LLC.

## IV. CONCLUSION

Accordingly, for the reasons stated above and as otherwise stated in the objections filed by the Trustee and APT, confirmation of the Debtor's Second Plan is denied (and in the alternative, confirmation of the Fifth Plan is denied), and the request to dismiss the Debtor's chapter 13 case is granted, without prejudice. A separate order shall be entered denying confirmation and dismissing the case in accordance with this memorandum of decision.

###

Date: July 27, 2015

Mark Houle
United States Bankruptcy Judge

16